FILED

2018 AUG 31   PM 4: 07

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY___

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

DAVID CARROLL WILLNER,

        Defendant.

SA CR No. 18-

**CR 18 00184**

**I N F O R M A T I O N**

[18 U.S.C. § 1343: Wire Fraud
Affecting a Financial Institution;
18 U.S.C. § 2(a): Aiding and
Abetting]

The United States Attorney charges:

[18 U.S.C. §§ 1343, 2(a)]

A.   INTRODUCTORY ALLEGATIONS

    1.   At all times relevant to this Information:

        a.   Defendant DAVID CAROL WILLNER ("WILLNER") was a
resident of Orange County, within the Central District of California,
and worked in Orange and Riverside Counties, within the Central
District of California.

        b.   Defendant WILLNER, along with co-schemer Jason Glasser
("Glasser"), owned and operated multiple residential mortgage
modification companies located or doing business in Orange and
Riverside Counties, within the Central District of California, and
elsewhere, including Financial Remedies, Inc.; National Mod Prep,

1  LLC, also known as ("aka") "National Modification Preparation" and

2  "NMP"; Financial Endeavors LLC, doing business as ("dba") Citizens

3  Financial Group; and LNEA, Inc., dba Integris Support Services

4  (collectively, the "Mortgage Companies"). These companies, though

5  different in name, operated for the same purpose and employed the

6  same employees, including clerical staff, sales representatives, and

7  loan processors. In general, defendant WILLNER handled the finances

8  and administered the day-to-day business; co-schemer Glasser

9  supervised the sales and marketing department and the processing

10  department.

11         c.   Defendant WILLNER was a signatory on the bank accounts

12  for each of the Mortgage Companies, including a Citizens Financial

13  Group's Bank of America bank account ending in x2014.

14  B.   THE SCHEME TO DEFRAUD

15         2.   Beginning on a date unknown but no later than in or around

16  2009 and continuing through at least in or around August 2012, in

17  Orange County and Riverside County, within the Central District of

18  California, and elsewhere, defendant WILLNER, co-schemer Glasser, and

19  others known and unknown to the United States Attorney, aiding and

20  abetting each other, knowingly and with intent to defraud, devised,

21  participated in, and executed, and attempted to execute, a scheme to

22  defraud various financially distressed homeowners as to material

23  matters and to obtain money from financially distressed homeowners by

24  means of material false and fraudulent pretenses, representations,

25  promises, and the concealment of material facts, through the use of

26  interstate wires in connection with residential mortgage loan

27  modification advanced-fee companies, which affected the financial

28

institutions with whom the homeowners had mortgages by exposing them
to an increased risk of loss.

3.   The scheme to defraud operated, in substance, as follows:

a.   Using the Mortgage Companies they controlled,
defendant WILLNER and co-schemer Glasser would set up and implement a
marketing plan to induce financially distressed homeowners to pay to
the Mortgage Companies fees of between approximately $2,200 and
$6,000, in advance of receiving the promised loan modification
services ("advanced fees").

b.   Defendant WILLNER and co-schemer Glasser would
recruit, hire, train, and supervise sales representatives who, acting
at the direction of defendant WILLNER and co-schemer Glasser, would
contact financially distressed homeowners and promise to act on their
behalf with the customer's lender to obtain a mortgage modification.

c.   To induce those homeowners to pay the Mortgage
Companies' advanced fees, defendant WILLNER, along with co-schemer
Glasser and other Mortgage Companies' employees, would make false
statements and cause such false statements to be made to the
homeowners, and would omit and cause to be omitted and concealed from
the homeowners material information, knowing the statements and
omissions to be false and misleading, including the following false
and misleading statements and omissions:

i.   That the Mortgage Companies had been in business
significantly longer than they actually had;

ii.  That the Mortgage Companies had successfully
assisted a significantly higher number of homeowners than they
actually had;

iii. That the Mortgage Companies had obtained mortgage

1  modifications for 90-95% of their customers, when, in fact, the
2  Mortgage Companies had obtained mortgage modifications for a
3  significantly lower percentage of their customers; and

4          iv.   That the Mortgage Companies offered a "100%
5  money-back guarantee" or full refund if the customer did not receive
6  a loan modification, when, in fact, as defendant WILLNER and co-
7  schemer Glasser then well knew, the Mortgage Companies rarely
8  refunded customer fees for customers who did not receive loan
9  modifications.

10         d.   In furtherance of this scheme and acting at the
11  direction of defendant WILLNER and co-schemer Glasser, the Mortgage
12  Companies' sales representatives would falsely claim during
13  conversations with homeowners that they could guarantee the
14  homeowners a new interest rate of 2%, which would significantly
15  reduce the homeowner's monthly mortgage payment; a 30% to 50%
16  reduction in the mortgage cost; forgiveness of past-due mortgage
17  payments; and a reduction of the principal of the mortgage.  However,
18  as defendant WILLNER and co-schemer Glasser then well knew, they
19  could not guarantee such results nor know what loan modifications, if
20  any, were possible for any specific homeowner without first speaking
21  to the homeowner's mortgage lender.

22         e.   The scheme would affect federally insured financial
23  institutions because the Mortgage Companies' sales representatives,
24  acting at the direction of co-schemer Glasser and others, would
25  advise the homeowners to pay the Mortgage Companies' fees in lieu of
26  their mortgage payments and stop paying their mortgage payments to
27  show hardship to their lender financial institutions.  On multiple
28  occasions throughout the course of the scheme, defendant WILLNER

1    became aware that the Mortgage Companies' sales representatives had

2    been and were providing such advice and admonished them not to do so.

3    As defendant WILLNER well knew, such advice exposed the lender

4    financial institutions to an increased risk of loss.

5              f.   After the financially distressed homeowners paid the

6    Mortgage Companies' advanced fees, Mortgage Companies' employees,

7    acting at the direction of defendant WILLNER and co-schemer Glasser,

8    would instruct homeowners to submit information to the processing

9    department, nominally for the purpose of negotiating a loan

10   modification on behalf of the homeowner, even though, as defendant

11   WILLNER then well knew, the Mortgage Companies employed too few

12   processors to keep pace with the number of homeowners they were

13   soliciting and complete the homeowners' promised loan modifications

14   in a timely fashion, and, in some cases, at all.

15             g.   When homeowners called to complain that nothing was

16   being done on their loan modifications, co-schemer Glasser sometimes

17   would falsely claim that the homeowners had provided incorrect or

18   incomplete information to the Mortgage Companies.

19             h.   After the Mortgage Companies received a high number of

20   negative customer reviews online, including complaints on the Better

21   Business Bureau website, in order to further the scheme, defendant

22   WILLNER and co-schemer Glasser, along with others, would establish a

23   website purporting to be a business-rating company called "Nationwide

24   Business Bureau," also known as "NBB" and "NBB Online" (hereafter,

25   "NBB Online"), which was available at www.nbbonline.org and on which

26   WILLNER and co-schemer Glasser would post and cause to be posted

27   false company information and fake customer reviews and "success

28   stories," in order to make the Mortgage Companies appear more

1  legitimate and to inflate artificially their ratings.  Defendant

2  WILLNER and co-schemer Glasser also would remove and cause to be

3  removed from NBB Online negative reviews of the Mortgage Companies.

4  At the direction of defendant WILLNER and co-schemer Glasser, the

5  Mortgage Companies' employees would direct potential customers to NBB

6  Online, where this false and misleading information was posted.

7       i.   When the Mortgage Companies were unable to generate

8  new customers due to negative online reviews, defendant WILLNER and

9  co-schemer Glasser would take down the current company's website and

10  turn off its email and telephones.  Defendant WILLNER and co-schemer

11  Glasser would then begin operating the mortgage modification scheme

12  under a new company name and establish a new corporate website,

13  telephone numbers, and email addresses.

14       j.   As defendant WILLNER and co-schemer Glasser well knew,

15  changing the telephone numbers and email addresses from one company

16  to another would prevent current customers from being able to contact

17  the company regarding the status of their loan modifications and

18  refund requests and being able to request new refunds.

19       4.   As a result of the scheme conducted by defendant WILLNER

20  and his co-schemers, homeowners paid approximately $3,102,136 to the

21  Mortgage Companies for loan modification services.  However, many of

22  those homeowners did not receive any loan modification at all through

23  the Mortgage Companies and, if their loans were modified, they were

24  not modified on as favorable terms as defendant WILLNER, co-schemer

25  Glasser, and other Mortgage Companies' employees had guaranteed and

26  such modifications were not the result of the Mortgage Companies'

27  efforts.

28

C.   USE OF THE WIRES

5.   On or about December 14, 2011, within the Central District of California, and elsewhere, defendant WILLNER and co-schemer Glasser, together with others known and unknown to the United States Attorney, aiding and abetting each other, for the purpose of executing and attempting to execute the above-described scheme to defraud affecting a financial institution, caused the transmission, by means of wire communication in interstate and foreign commerce, of a deposit of $1,250 from victim N.L.'s ABNB Federal Credit Union bank account ending in x2998 and located in Virginia Beach, Virginia, into Citizens Financial Group's Bank of America bank account ending in x2014 and located in the Central District of California.

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section

CASSIE D. PALMER
Assistant United States Attorney
Major Frauds Section